The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Let's be seated. Good morning. We have three cases for argument today. The panel of Judge Diaz, Judge Stack, and myself. We're going to proceed with the first case, the Perez-Morales case. Good morning, Your Honor. Thank you for this opportunity again to argue this immigration case before this Court. Allow me to start with a citation decided by this Court in 2014, where we know that ultimately in reviewing agency decisions in immigration matters, it is the responsibility of this Court to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the fact finder. Now, this is apropos in our case, Your Honors, because the Board arbitrarily ignored a clear evidence of mixed motive when it failed to apply the correct standard formulated in JVM case, BIA decision of 2007 for evaluating the state. The unrebutted, legally significant evidence of mixed motive is shown by the fact that Abner Perez is a witness to a heinous crime of murder of five people and mutilating the bodies perpetrated by the notorious Zeta gangs in Guatemala. So is this going to the nexus issue? Yes, Your Honor. At this point, it's more of the standard because the Board failed to go on the whole gamut of the test of persecution, nexus, and the particular social group issue. So in other words, it dismissed mainly within the context that this is a result of a general condition of strife in Guatemala. Hence, in fact, the mixed motive that I am raising, Your Honor, has been noted by the Board as one of the basis of the claim of Abner Perez. So the Board is fully aware that the petitioner was claiming asylum based on being the witness to the crime. And the mixed motive, even based alone on that decision by the Board, consequently, the Board should have evaluated the evidence before it based on the standards laid down in JVM. And it's clear, Judge, that there is a legal error in failing to appreciate this unrebutted and legally significant evidence of mixed motive due to the failure of the Board to use or utilize the proper legal standard as decided in the two cases decided by this Court, in a bunch of recessions. Mr. Valera, can I just interrupt you for a second? Yes, Your Honor. I want to highlight a portion of the BIA's opinion in this case where it affirmed the IJ, noting that Morales' testimony, quote, did not reveal any motivation other than the criminal intent to take his property and to threaten retribution if he reported what he had witnessed to the police. Now, that first motivation, it seems, doesn't help your client because just a general proclivity to commit robbery or crimes in general isn't enough to satisfy the connection to the assumed protected social group. But doesn't that second sentence suggest that, in fact, the gang was motivated to seek retribution against the very people that were defined by the protected social group? In other words, doesn't that satisfy the test, the group that you, your client, presented to the Board? No, Your Honor, because what is clear here is that… Maybe you didn't understand my question. I'm suggesting to you that that meets the, that satisfies the requirements of the Nexus test. You disagree with that? No, I agree with that. I thought you might. Yes, I agree with that. I'm not sure that the government will. But, I mean, that language suggests the very essence of the protected social group. You know, the BIA nor the IJ, they never really engaged with whether or not this is, in fact, a protected social group. But if you assume the truth of that statement, it suggests that the only, the unrebutted testimony in this record is that at least one reason why the gang threatened your client was because he fell within this group of witnesses who are willing to testify against gang violence, the very protected social group that the BIA and the IJ assumed was sufficient for purposes of this case. That is absolutely correct, Judge. But you should focus your argument on that. That's why I asked you, are we talking about Nexus here? What Judge Diaz has just pointed to you is a keen issue in this case. Yes, Judge. That's… Well, having said that, so why, I mean, that, I guess that maybe the counter to that is that that's a very general amorphous statement. And do you think it is, in fact, sufficiently tied to the assumed protected social group in this case? Or is it just a statement that gangs are prone to commit violence generally in Guatemala, unfortunately? I think, Judge, it meets the elements of particularity. It meets the element of social distinction, immutability, in terms of it being a cognizable particular social group. Well, again, maybe I'm confusing you, but I don't know that we can reach that issue because that would be something for the Board to decide. If we were to rule in your favor, it seems to me that this case would go back to the Board for a determination as to whether or not the protected social group in this case actually satisfies that three-part test that you were about to talk about. Unless you're arguing, and I guess you can, that the record in this case is sufficient and that you think we, by statute or regulation, can engage in that analysis. What is your position on that? Our position is this case has to be remanded before the Board on this particular aspect that they cannot just simply be considering that this is part of a general condition of strife, and hence there are undebatted evidence, and the Board should then remand the case to the IJ to supplement the record. Obviously, it's clear here that in terms of the persecution nexus in particular social group, which was completely ignored by the Board and not following the standards, so it's very clear that it is based on legal error by the Board of Immigration Appeals. Now, at the same time, Judge, what is very important to note also is the Board failed to appreciate the facts of the future persecution relative to the case of Christine Valladares v. Holder on the genuine and subjective fear of persecution where, under the circumstances, a reasonable possibility has lost 10% chances. Now, what is to be noted here, Judge, is it appears that the Board, in assessing the evidence presented, which you have noted, the Board ignored the gravity of the crime petitioner witness, the notoriety of the center guns and the country conditions of witnesses being targeted specifically. Targeted by the guns, where there is a 10% chance of persecution. Likewise, Judge, in the context of the Convention Against Torture, I would just like to point out the recent decision of the Circuit Court of Appeals in Rodriguez-Arias v. Whittaker decided last month where this court is now joining. You don't have much of a case on the Convention Against Torture. There's no proof here that it's more likely than not that you would have been tortured, and there's nothing here to suggest that state officials either participated in that torture or not. You're just not going to get there unless you can convince me otherwise. Well, the point here, Judge, the Board made a clear, what you call, review, clear error review in terms of the Convention Against Torture provision. What it says is that they did not go beyond the so-called predictive finding. They stopped in saying that because there is no evidence on that issue, while it might be possible that your client can be tortured or there's a reasonable possibility can be tortured, but there is no independent judgment made by the Board of Immigration Appeals on that, which is precisely the context of the Rodriguez-Arias v. Whittaker case. But nevertheless, Your Honor, the whole issue in this case is what we are asking is that this case be remanded to the BIA because clearly it was made a point of reference, as mentioned earlier, that the Board of Immigration Appeals failed to assess and weigh the, arbitrarily ignore the evidence presented in this case. All right. Thank you. We'll hear from the other side. May it please the Court. Colette Winston for Attorney General William Barr. First, there is no compelling evidence demonstrating a nexus to a protected ground here, either witnessing a gang crime or a family relationship to Mr. Perez-Morales' brother and actual or feared persecution. Second, there is no compelling evidence demonstrating past torture or a likelihood of future torture to qualify Mr. Perez-Morales for CAT protection under Convention Against Torture. Speak directly to the nexus issue. There seems to be some evidence that the Board acknowledged that there was harm, that he was threatened in part because he witnessed the massacre. And from the record, I think you can glean, we've got to assume that that particular social group, the witnesses of a serious crime is a group here. So assuming that, speak to the nexus issue as to why there's not evidence that the Board haven't said that that threat of harm existed. We have to assume the two particular social groups. The Board did not reach it, so it has to be assumed here for purposes of nexus. The nexus, he was a witness to a gang crime. He was a victim of robbery and he was threatened. But the gang here acted in furtherance of their crime. How was it in furtherance? It was in furtherance because they were trying to protect their crime from being uncovered. So the motive of the gang, of the Zetas here, is criminal intent. Well, that's one motive, but the other motive, according to Morales' unrebutted testimony, is to threaten retribution if he reported the crime. Correct, but he did not report the crime to the police. So why is that relevant? Well, I think it's relevant because after the witnessing of the crime, we have to look at the whole picture. We have to look at the entire circumstances, the totality of the circumstances. And if you step back and look at the whole picture instead of a more narrow view, you can see that he never reported it to the police. But the protected social group is just witnesses of gang crimes. It doesn't say anything about reporting. And I'm having trouble understanding why there would be a reporting requirement here. Are you saying that in order to satisfy the protected social group, he would have actually had to attempt to report the crime? No, I'm not saying that. We're assuming that he satisfies the protected social group. The question is, is there a bridge between that protected social group and his feared or actual or feared persecution? Right, and the only evidence in the record is Morales' unrebutted testimony, which the IJ, even though he was a little skeptical about it, assumed that it was credible. In which he said the gang's motivations, and the BI affirmed this, saying that there were two motivations. One, criminal intent to take his property, and two, an intent to threaten retribution if he reported what he had witnessed to the police. So why isn't that second finding dispositive in this case? I mean, the case obviously would then need to go back to decide whether or not this is actually a protected social group. But on the next question, I'm having trouble understanding why. If that's the only evidence in the record, why doesn't the government lose? Well, the sentence that you pointed out is really the key sentence in the board decision. I think I've made that very clear. I just need to figure out why it is that it's not dispositive in favor of the petitioner. Because they're both criminal intent. Well, again, you can have more than one intent and more than one motive. Certainly. They're not inconsistent. The gangs apparently have multiple reasons why they threaten and harm against people, unfortunately. But in this case, the evidence is that one of the reasons is retribution for witnessing crime, which falls directly under the umbrella of the protected social group that's at issue in this case. But the threatening of the retribution stems from a criminal intent. And the key is it has to be at least one central reason. It can't be a tangential reason. It can't be a superficial reason. It has to be one central reason. So the sentence that Your Honor pointed out was that the respondent's testimony did not reveal any motivation other than the criminal intent to take his property. And I would read the criminal intent to threaten retribution if he reported what he witnessed to the police. That if you stand back, the threat was in furtherance of the same crime, the murder. It was to make sure that that murder didn't come to anybody's attention. So when the gangs threatened him and told him, if you go to the police, we're going to kill you, that is just part of a cover-up of the crime they had just committed. So in many of the cases, this court has accused the board, in a sense, of taking too narrow a view. I'm asking the court to stand back and to take a broader view and to see that... It sounds... I don't understand your argument. It sounds like you're saying that because the threat worked, that there's no nexus. Because he didn't go to the police, there's no... That's your argument, that because he didn't go to the police, there's no nexus? It's because the whole thing falls under the umbrella of criminal intent. That this was kind of a random occurrence, that it didn't repeat itself, that he didn't recognize the gang members, he never had any contact with them later. And I think that the future acts kind of informs the motive at the time. So if their motive was to make sure that their crime didn't come to the attention of the police, that is just part and parcel of the original crime of the gang that he unfortunately witnessed. But it's really not a nexus, it's really part of criminal acts, random violence by gangs in Guatemala, which is prevalent, but which he was part of. So I think if you step back, you see that it's all part of the criminal intent picture. So it doesn't matter one way or the other, gangs can just go around threatening witnesses in Guatemala, and it's just all part of the big picture. Well, they're not allowed to threaten witnesses, but it's part of... So what would have to have happened here for there to be a sufficient nexus? I think for this to be at least one central reason, and it is the burden of proof of the petitioner here, he would have had to prove kind of a pattern, kind of other acts that occurred afterwards, threats, visiting his home. If you look at all the different cases, Cordova, Cortez... With respect to him, is what you're saying, since he was only threatened once. Well, he was definitely threatened once, because we have to assume that what he said is credible. So he would have had to have been threatened more than once. Is that what you're saying? There has to be more than that. It can't be that random or incidental or tangential. It has to be more central. And I think to make it central, there's got to be acts that follow. And if you look at the other cases, it's not just one random act. It's a series of gangs going to people's houses, throwing stones, threatening, beating people up. It's not just a one-time occurrence. So that's not sufficient for a nexus. I would argue that it's tangential. It may be a reason, but it's a tangential reason. It's not a central reason. And here, the record has to compel that it's at least one central reason. It strikes me that what you're talking about with respect to the repetition of the misconduct or criminal activity goes more to whether there was actual persecution in this case. But that, again, I think was assumed here. The focus was simply on the nexus. That's correct. And so under your theory, even though we're assuming that this is a legitimate protected social group, it doesn't sound like Morales would ever be able to prove it. Because what if a gang had said, made it very direct, Ms. Morales, you just witnessed these murders, and you better keep your mouth shut because we're going to keep coming after you. And that was it. That's still not enough? I would say that's still not enough. I would say that would be tangential, and that would be incidental. But he was there for two more months. He didn't know the gang members. He didn't know whether they really knew him. There was no follow-up. It was too random. And I think that here, because he had no further contact with the gang members after that one incident on the road, I think that that nexus isn't at least one central reason. Well, he left shortly thereafter, didn't he? How long was he in the country? I'm trying to remember. It appears to be two months. I think that just to give you the dates, I think this occurred in October of 2013, and he entered Arizona in December of 2013. So it was a two-month spread. As far as his brother, there was a five-year spread. So that's even more tenuous and even more speculative. But I believe the real reason for his stated fear is rooted in generalized conditions of crime and strife and gang problems in Guatemala. While his fear is understandable, the question here is, is there a nexus to the protected ground, even assuming past persecution, even assuming that there's a particular social group here? I think you've identified the difference of your view with what's been articulated here. That is that you view the central reason as being predominantly not the fact that he feared the prosecution for this, but that was only tangential in this case. Whereas it appears to at least, it can be discerned from the record, that that at least is one central reason. Suppose someone witnesses five men who've been murdered and being dismembered by a gang. The gang then beats him up and says, you better not tell anyone on this or we are going to kill you. The question is, is that a central reason? Does that fit within the definition of that? And there seems to be strong indication. The bottom line is, even if we agree with that position or go and remand this, this case is far from over. There's a lot more to this case. You've still got social groups to even deal with if we do remand, and a lot of other issues in this case here. That's true. I think we may be at an impasse in at least understanding your position. You've made it very clear what your position is. You could restate it at any time, but I think that's exactly what you're going to keep saying. We're probably going to keep saying that from the bench here too. I understand, Your Honor. Yeah, there are areas that the immigration judge and the board didn't cover. And so if there's a remand, the board and immigration, well, the board and then maybe the immigration judge for more evidence would have to address those areas, including a particular social group. But as Your Honor pointed out, this case just turned on nexus. That's right. And nexus alone. So the board felt that because he was a witness to the gang crime, he was a victim of robbery, he was beaten up, that this was part and parcel of generalized criminal conditions in Guatemala. Well, the IJ and the board, I think, also concluded, though, that even if he had satisfied the nexus requirement, that he would lose in any event because the record, at least according to them, would indicate that he could safely relocate somewhere else in Guatemala. So what's your position on that? Do you think they got that right? I do, because when he was asked about relocation... What is the burden with respect to past persecution on the gang witness crime? Well, initially, the burden of past persecution is on the petitioner. If he's able to prove past persecution, the burden shifts to the government. And then the government has the burden of persuading otherwise. And then there's also the well-founded fear of future persecution. So initially... With respect to the burden between past and future persecution, I thought the burden would be on DHS with respect to past persecution. The initial burden is on the petitioner to prove that he suffered past persecution. And there was no such finding here one way or the other. Then, if he's able to prove that, the burden then switches to DHS to prove that there's no well-founded fear of persecution. So it's a shifting of the burden at that stage. So as far as internal relocation, he himself said on page 92 of the record, there's almost no place safe, quote-unquote. So his three sisters remain in Guatemala. They've remained unharmed. Granted, they were not witnesses to a murder, but they are sisters of his brother, just like he is a brother to his brother. That's a separate claim, though. I'm focusing on the murderer-witness element, which is unique to him, right? Right. It is unique to him. And I think just his sentence, his own statement, that there's almost no place safe, means that there may be some place safe in Guatemala. He didn't rule out that there was just no place he could relocate to that would allow him to be safe. And after all, he was safe for two more months. And the murder occurred in 2013. It's now 2019. So six years has elapsed. And again, it becomes speculative and tenuous if he returns to Guatemala, that at this point the police would even be interested in this crime of 2013, or that the Zetas would even remember him as having been a witness in 2013 to one of their probably many crimes. So the internal relocation, as stated by the board and noted by the immigration judge, is something that we would stand behind that finding. As far as the CAC claim, Judge Nguyen was correct. There was no past torture here. And it's not more likely than not that a government official would consent or acquiesce, including the idea of willful blindness, to any torture in the future. And so he did not meet his burden of proof on either ground, either on the nexus ground or on the torture ground. So if there are no further questions, the petition for review should be denied. And thank you. Thank you. We have a few minutes of rebuttal. Thank you, Your Honor. Let me address the issue of internal relocation. I think ACFR rules and regulations are very clear. Where there is a past persecution, or the persecutor is government, or is a government-sponsored. In this case, there's also the claim with regard to the brother who was a police, was persecuted, and the family members are targeted. Then the presumption is on the government, and the respondent here did not prove the possibility or probability of internal relocation. Now, the context raised by the government is that what is important here is that the board short-circuited the process by ignoring clear and unrebutted evidence of mixed motives. Instead, held that what happened to the petitioner is just part of the general strife. And this is precisely what is being frowned on by two circuit court decisions of this court, which was cited, Cordova versus Holder, and Crispin Valdez versus Holder, where the BRA continued to reason out that because it's simply a general strife, then we don't have to proceed on persecution, nexus, and the particular social group analysis. The current issue on this past persecution is burden.  Who bears the burden? Speak to that. Well, the past persecution, Your Honor, it's clear that the respondent was able to prove that there was past persecution. He was not only threatened, he was physically beaten, almost dying when he was left by the Zeta guns. Why? Because there is a particular, not central reason why they want to silence him. And precisely, although it was mentioned that this happened only once, the certified administrative record, pages 132 and 139 on the U.S. Department of State reports, indicating that cooperating witnesses where it give rise to a reasonable fear of persecution, where it cited other human rights problems, including government failure to protect even judicial officials, and witnesses continue to report threats, harassment, surveillance, by drug trafficking organizations. At best, from your perspective, it seems that the burden here is unclear, as to what applies, because the burden typically is going to be with the defendant here, except when you show that there's been past persecution. The question here is whether, did either the immigration judge or the board address the issue of past persecution? It seems as though it's not clearly addressed. That then indicates that there's a question as to whether the burden that, it's unclear as to which burden should apply, which if it did remand, that's an issue that the board could then resolve. It just seems to me that's more of a straightforward way to deal with this than the avenue you take. Yes, Your Honor. So in that instance, Your Honor, again, we respectfully pray that our petition for review should be granted and it should be remanded to the Board of Immigration Appeals. Thank you very much for giving me the day. Thank you both. Court will come down and brief counsel and proceed on to the next case.
judges: James A. Wynn Jr., Albert Diaz, Stephanie D. Thacker